### J. AARON & COMPANY v. M. G. SMITH COMPANY ET AL.

Decided February 5, 1907.

**Contract of Purchase—Breach—Tender of Goods.**

Where the purchaser of 3,000 barrels of sugar to be delivered from time to time rejected without cause one of the shipments, the seller was not required to tender the balance of the sugar, but had the right to declare the contract at an end.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Hutcheson, Campbell & Hutcheson,* for appellants.—The plaintiffs asked the court to give the following instructions to the jury, which was refused: "The court instructs the jury that they will not consider any evidence offered in this case in regard to the assertion of the verbal contract, over the 'phone, between the plaintiff and John L. Wortham, Financial Agent, because there is no evidence that the State claims or asserted any breach of contract, or authorized the defendant, M. G. Smith Co. to divert or convert any of said sugars from plaintiffs and appropriate the proceeds thereof, and in the absence thereof, the act of defendants in such diversion and conversion renders them liable to the plaintiffs for the difference between the contract price they were to pay them and the market value of said sugar, and you are therefore instructed to disregard all the testimony concerning the pleaded contract of December 12, 1904."

The charge No. 2, asked by plaintiff and refused by the court, is as follows:

"1. The jury are instructed that, if they should believe from the evidence that a conversation, pleaded by defendant as having been made on the 12th day of December, to permit sugars to be shipped without being attended or preceded by samples of the sugar, this did not deprive the plaintiff of the right, at any time, to inspect the sugar or require inspection thereof before paying therefor, nor the right to reject the sugar if found, or believed by him to be less in grade than the sugar contracted for. And his exercise of this right did not violate the contract between him and the State, or defendant Smith Co., should you find that such contract was, in fact, made on the 12th.

"2. The right to vacate this contract, or declare it vacated or breached, did not rest with the defendants in this case, M. G. Smith Company, and there is no evidence in this case showing that J. L. Wortham, or the other contracting party, insisted on or claimed such breach, and the defendants M. G. Smith Co. could not, on any such pretense, receive the sugar from the State, and convert them, or divert the shipment thereof from J. Aaron & Company, they not being parties to said contract."

"By the contract between M. G. Smith Company and plaintiff, the agreement was made that any controversy between them as to grade of any sugars offered, that the same was to be settled and determined by submitting samples thereof to E. W. Sewall and T. W. House, and

you are instructed that if such controversy arose between them, as to 400 barrels of Velasco sugar, or 500 barrels thereof, or any other Velasco sugars, it was not their privilege to breach the contract or abandon its performance until said House and Sewall acted on said sugar, as contemplated in said contract, and the plaintiff refused to take the sugar after they decided it to be choice."

*Selden Leavell,* for appellees.

REESE, ASSOCIATE JUSTICE.—On November 17, 1904, the following contract was entered into by and between John L. Wortham, financial agent of the penitentiaries of the State, of the one part and M. G. Smith Company, a partnership, on the other:

"Agreement: John L. Wortham, financial agent of the Texas State Penitentiary, has this day sold to M. G. Smith Company, of Houston, Texas, three thousand (3,000) barrels of choice Y. C. sugar at 4 35-100 ($4.35) dollars per one hundred pounds, f. o. b. Harlem or Velasco.

"The M. G. Smith Company is to furnish shipping instructions as rapidly as the sugar is made, and Jno. L. Wortham, financial agent, is to furnish samples of each strike. Should any sample prove unsatisfactory to M. G. Smith Company, they to notify by 'phone, and such strike is to be left out until same is adjusted by T. W. House and E. W. Sewall, of Houston. When shipment is effected, and no objection has been made by M. G. Smith Company, no reclamation shall be allowed.

"M. G. Smith Company are to deposit three thousand ($3,000) dollars as a guarantee for the fulfillment on their part of this contract, and Jno. L. Wortham, financial agent, will not be responsible for any sugar after obtaining bill of lading from the transportation company.

"Drafts on M. G. Smith Company to be collected through the First National Bank of Houston, and each shipment to be drawn for, draft attached to bill of lading.

"Witness our hands at Huntsville, Texas, this 17th day of November, 1904.

Jno. L. Wortham,<br>
Financial Agent.<br>
M. G. Smith Company."

Witness, R. W. Brahan."

On November 23 the contract was transferred to Aaron & Co., by an agreement in writing as follows:

"We hereby transfer all our rights and interests, etc., under this contract to J. Aaron & Co., of New Orleans, La., on receipt of three thousand dollars ($3,000) in hand, receipt of which is hereby acknowledged, with the exception that the sugar is to be invoiced by us to J. Aaron & Co. at the following prices: f. o. b. Harlem or Velasco, 1,000 bbls. at $4.40; 500 bbls. at $4.45; 1,500 bbls. at $4.55.

"Witness our hands, at Houston, Texas, this 23d day of November, A. D. 1904.

(Signed "M. G. Smith Company, J. Aaron & Co., per Alex Hochstein."

On the same day Smith Company wrote Aaron & Co., as follows:

"Houston, Texas, November 23, 1904.

"J. Aaron & Co.,
     New Orleans, La.
"Gentlemen: In confirming sale to you today of 3,000 barrels of choice Y. C. Sugar, as per attached contract, we further agree that such of this sugar as is not classed choice by T. W. House and E. W. Sewall will be replaced by us with choice Y. C. sugar, our intention being to deliver to you the full contract quantity of choice Y. C. sugar, which is 3,000 bbls.

"We further agree that, in consideration of your having put up with us $3,000 margin, to bind this sale, that we will also allow you $15.00, in final settlement, to cover at least part of your interest on the amount of your margin.

Yours truly,

M. G. Smith Co."

Afterwards there was some change in the terms of the contract with regard to the Velasco sugar, as to the character of which the evidence is conflicting, and out of this spring the issues involved in this suit.

After having delivered some of the sugar which was received and paid for by Aaron & Co., on December 26 a shipment of 400 barrels was rejected by Aaron & Co. on the ground that it was not up to contract grade and they accompanied such rejected shipment with the statement that they would not accept any sugar of that grade upon the contract. Smith Company claim that these sugars were fully up to contract grade and treated this refusal as a breach of the contract and thereupon appropriated the balance of the 3,000 barrels contracted for, notifying Aaron & Company to this effect, and that the $3,000 deposited by them would be remitted upon release of the contract. Upon this Aaron & Company sue to recover the $3,000 deposit, and damages for the conversion of all of the sugar not delivered.

Upon trial before a jury Aaron & Co. had judgment for the $3,000 deposit and damages for conversion of 829 barrels of Harlem sugar, and from this judgment they appeal.

Under the original contract, before any sugar was shipped, the purchasers were to be furnished with a sample of each "strike" of sugar making up the shipment, which was to be examined by the purchaser. If not satisfactory, E. W. Sewall and T. W. House of Houston were to determine whether the sample of such strike came up to contract grade. This was to be settled before shipment, and after shipment there was to be no reclamation allowed on account of the sugar not coming up to contract. Appellees claim that on or about December 12, by mutual agreement between R. W. Brahan, manager of the sales department of the penitentiaries, representing Wortham, and appellants and appellees, this contract was so changed as that thereafter such samples of each strike was not to be sent before shipment, but that the sugar should be shipped and received upon the guaranty of Wortham, financial agent, that the sugars so shipped should be of contract grade or equal to a certain specified strike of sugar. As stated in appellees' pleadings the terms of the change in the contract, so made and alleged to have been assented to by all of the parties, was that Wortham was to be relieved

of the obligation of sending samples of each strike "prior to shipment," substituting therefor his guaranty.

If this change in the contract was made with the assent of appellants we think that necessarily it would require the sugar to be received without such samples. If samples of each strike were to be sent to the purchaser and examined by him, and in case of disapproval by him by the arbitrators House and Sewall, before the sugar was accepted, there would have been no necessity for the guaranty of Wortham.

In the changed contract, providing for the guaranty by Wortham, nothing was said about the services of House and Sewall, so far as the testimony shows. Their duties as provided in the original contract were not required under the change in the terms, if made as testified by appellees. Upon this phase of the case the court charged the jury as follows:

"If you believe that Aaron & Company consented and agreed to a change in the contract, to the extent that they would accept shipments direct from Velasco without having the samples forwarded, and that they would take the State's guaranty that the shipments should equal to strike No. 43 from Harlem; such agreement, in legal effect, dispensed with the necessity of submitting samples to House and Sewall. And if you further believe that, in pursuance of said agreement, and relying upon the same, the defendants did ship or tender to the plaintiffs sugar equal to what the plaintiffs agreed to receive, and that plaintiffs refused to accept the same, and believe that all the balance of the sugar the defendants had all ready to tender was of like quality as what they did tender, and as sufficient to complete the 3,000 barrels, then by such tender, if made in compliance with the understanding and agreement, the defendants complied with their undertaking; and if you so find the facts to be, you will find for the defendants, except as to such sugar as you are instructed concerning in next preceding paragraph 6, in connection with which you will construe this paragraph." "Paragraph 6" only excepted the 827 barrels of sugar previously accepted. This charge is assigned as error.

There was evidence which tended to show that a change in the contract had been made, as heretofore pointed out, and that appellants assented to the change. We think that the legal effect of such change dispensed with the necessity of submitting samples to House and Sewall. In fact, when samples of the sugar which appellants refused to receive were sent to them, they said nothing about submitting the matter to House and Sewall, but rejected the sugar. If the sugar, as represented by the samples sent, was in fact up to contract grade, appellants' refusal to accept it was a breach of the contract. The controlling issue then was whether the sugar was sent as had been contracted for, and upon this issue the evidence was conflicting.

It can not be said that appellees, after the transfer of the contract to appellants or after the agreement which is designated a transfer, had no further interest in the contract. This transaction was not so regarded by any of the parties. It was not such a transfer of the contract itself as would have this effect. It was rather, in legal effect, a resale of the sugar by appellees to appellants for an increased price on the same conditions as were embraced, first in the original contract between Wortham

and appellees, and afterwards upon those embraced in the contract as changed. Appellees were still to receive the sugar and pay for it and reship to appellants as directed by them. Occupying this position, a breach of the contract by appellants authorized appellees to declare it at an end. That this was the view taken by all of the parties is shown by the fact that appellants dealt not with Wortham direct, but with appellees, who continued to deal directly with Wortham with regard to the sugar.

There was evidence which tended to show that Brahan was authorized to make the change in the contract, and to guarantee that the sugar should be such as provided in the contract. Appellants insist that there is nothing in the evidence which tends to prove that under the changed contract Wortham was to make this guaranty. In stating what is said to be all of the evidence upon this point, appellants have overlooked the following in the testimony of M. G. Smith, when recalled:

"Q. Will you state whether or not Mr. Brahan said that he would guarantee that the sugar shipped from Harlem, that is, from Velasco, would be choice.

"A. Yes, sir.

"Q. Did you submit that proposition to Mr. Aaron? That is, over the 'phone?

"A. He said if it was that way to go ahead and ship the sugar."

We think the charge referred to fairly submitted to the jury the issues raised by the evidence, and was not error.

We have endeavored by an inspection of the record to ascertain the facts with regard to the 400 barrels of sugar which were rejected by appellants. Our conclusion is that this is the five cars of sugar referred to in appellees' telegram to appellants of December 24, and appellants telegram in reply on the same day, and their telegram acknowledging receipt of sample on December 26. The evidence is confusing as presented in the record.

It was not error to refuse appellants' requested instruction, as set out in the second assignment of error. It seems to have been contemplated that Wortham was to deal with appellees and they with appellants, with regard to the sugar. It did not matter that Wortham did not claim any breach of the contract on the part of appellants.

There was no error in refusing appellants requested instruction No. 2, as complained of in their third assignment of error. Appellants did not claim the right to inspect the sugar itself before their rejection, but did reject it upon inspection of the sample sent. Unquestionably they were justified in rejecting the sugar, if in fact the sample did not come up to contract, and this issue was fairly submitted to the jury in the court's charge.

What has been said disposes of the fourth assignment of error which is overruled.

The seventh assignment of error assails the verdict as contrary to the evidence in that there was no evidence of a tender by appellees of the balance of the sugar and a rejection thereof by appellants. This assignment is without merit. Upon the rejection by appellants of the 400 barrels, if such rejection was without cause, appellees were not required

to proceed further with the contract, but had the right to declare the same at an end. (Hearne v. Garrett, 49 Texas, 625.)

We find no error in the judgment and it is affirmed.

*Affirmed.*

Application for writ of error dismissed.